**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **KAMILAH SWINGON,** | ) |
| **1645 V Street, SE, #4** | ) |
| **Washington, D.C. 20020** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )        **Case No. _____** |
|  | ) |
| **ALLIED BARTON SECURITY SERVICES, LLC,** | ) |
| **Serve: Registered Agent CT Corporation** | ) |
| **1015 15th Street, NW, Suite 1000** | ) |
| **Washington, D.C. 20005** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **NATIONAL GEOGRAPHIC SOCIETY,** | ) |
| **Serve: Registered Agent Angelo M. Grima** | ) |
| **1145 17th Street, NW** | ) |
| **Washington, D.C. 20036** | ) |
|  | ) |
| **Defendants.** | ) |

_____ )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kamilah Swingon, by and through her undersigned counsel, hereby brings this

Complaint and Demand for Jury Trial against Defendants Allied Barton Security Services, LLC

("Allied Barton") and National Geographic Society ("National Geographic") for discrimination

on the basis of sex and pregnancy and retaliation for opposing the discrimination in violation of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII").

**PARTIES & JURISDICTION**

1.      Plaintiff Kamilah Swingon is an individual resident of District of Columbia and

resides at 1645 V Street, SE, #4, Washington, D.C. 20020.

2.      Defendant Allied Barton is a Limited Liability Company formed under the laws of the state of Delaware with its principal office located at 161 Washington Street, Suite 600, Conshohocken, Pennsylvania, 19428.  Allied Barton also operates an office located at 121 New York Avenue, NW, Suite 501, Washington, D.C. 20005.  Allied Barton provides staffing, janitorial services, and security services and systems to other companies across the country.

3.      Defendant National Geographic is a Non-Profit Corporation formed under the laws of the District of Columbia with its principal office located at 1145 17th Street, NW, Washington, D.C. 20036.  National Geographic is a global organization which focuses on research, conservation, and education projects around the world.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2), as the events giving rise to this action occurred at the National Geographic building located at 1145 17th Street, NW, Washington, D.C. 20036.

6.      On July 21, 2016, Ms. Swingon filed timely charges of discrimination with the Equal Employment Opportunity Commission (Charge Nos. 570-2016-01699 (Allied Barton) and 570-2016-01702 (National Geographic)) claiming Sex Discrimination and Retaliation against Allied Barton and Sex Discrimination against National Geographic.

7.      The EEOC issued a right to sue letter to Ms. Swingon on January 25, 2017 after more than 180 days had passed since the filing of her charge with no resolution.

8.      In conformance with the law, Ms. Swingon has filed the present action prior to the expiration of ninety (90) days from the date of receiving her right to sue letter.  Accordingly, Ms.

Swingon has exhausted all administrative remedies and all conditions precedent to Ms. Swingon

maintaining this civil action have accrued, occurred, or been waived.

## FACTS

### Background on Ms. Swingon's Employment

9.      Ms. Swingon was originally hired by Allied Barton as a security officer on or

about November 9, 201 5.

10.      As a result of Ms. Swingon's excellent work, Allied Barton promoted her to a

new position as a Loading Dock Supervisor on or about January 4, 2016.  In this position, Ms.

Swingon was assigned to supervise the loading dock at the National Geographic building in

Washington, D.C, under a contract Allied Barton had (and has to this day) with National

Geographic.

11.      Prior to the time Allied Barton gained the National Geographic loading dock

contract, National Geographic had employed its own staff directly to work on the loading dock.

The entire team hired and retained by National Geographic was male.  Likewise, after Allied

Barton took over the loading dock contract for National Geographic, the loading dock workers

continued to be predominately by males.

12.      As the loading dock supervisor, Ms. Swingon was responsible for oversight and

management of the Allied Barton loading dock workers.  She oversaw the freight movement

operations and procedures during her shift, managed the staff and work flow, supervised and

enforced safety measures, trained staff, supervised maintenance of equipment and the facilities,

and performed other administrative tasks associated with smooth and efficient operation of the

loading dock.

13.     As was the case with her prior position, Ms. Swingon performed exceptionally well as the Loading Dock Supervisor.  She improved efficiency and led various initiatives to clean, organize, and streamline the loading dock and the freight systems at National Geographic.

14.     As Loading Dock Supervisor, Ms. Swingon reported to both Allied Barton and National Geographic employees.

15.     With respect to Allied Barton, Ms. Swingon reported directly to Clarence Kelly, the Field Operations Manager.  Her second tier supervisor was Abraham "Avi" Ben-Moshe, the Client Value Manager.

16.     With respect to National Geographic, at the start of her employment, Ms. Swingon reported directly to Lois Stone, the Distribution Manager.  Her second tier supervisor was Comico Hadden, the Director of Facilities Management.

17.     Allied Barton and National Geographic served as Ms. Swingon's joint employers for purposes of Title VII.  Each exerted control and supervision over Ms. Swingon, each had the power to discipline and terminate Ms. Swingon, and each supervised Ms. Swingon.

18.     At all times during her tenure as the Loading Dock Supervisor, Ms. Swingon was obligated to report to, be supervised by, and take instruction from employees of both Allied Barton and National Geographic.  Both Allied Barton and National Geographic had authority to control and direct Ms. Swingon in the performance of her duties, and both had the power to discipline and terminate her employment.  National Geographic in particular supervised Ms. Swingon on a day-to-day basis.  Although Ms. Swingon was paid exclusively by Allied Barton and maintained as an employee of Allied Barton for tax purposes, she reported directly to the loading dock in the building owned and operated by National Geographic and used equipment and fixtures owned by National Geographic.  Ms. Swingon's training was provided by National

Geographic, while her schedule was set by Allied Barton.  Moreover, during her time as Loading Dock Supervisor, Ms. Swingon provided services exclusively for the benefit of National Geographic (and Allied Barton), and did not provide any other contract services for any other company.

## Acts of Discrimination and Retaliation

19.     In or around early April 2016, Ms. Swingon learned that she was pregnant.

20.     On May 11, 2016, Ms. Swingon notified Ms. Hadden and Ms. Stone of National Geographic that she was pregnant.

21.     Likewise, on May 12, 2016, Ms. Swingon notified Mr. Kelly of Allied Barton that she was pregnant.

22.     Immediately upon notifying these supervisors of her pregnancy, National Geographic and Allied Barton instituted a campaign of discrimination to reduce Ms. Swingon's role and remove her from her position as a result of her pregnancy.

23.     On May 13, 2016, only two days after Ms. Swingon notified National Geographic of her pregnancy, National Geographic assigned Jeffrey Moore, a male in his 50s, to serve as a new National Geographic Loading Dock Supervisor.

24.     The position given to Mr. Moore was a newly created position.  Prior to the time Mr. Moore was moved to the new position, Ms. Swingon and her predecessors reported directly to Ms. Stone and had autonomy over the loading dock themselves.

25.     Upon coming to the loading dock, Mr. Moore immediately took over the majority of Ms. Swingon's on-the-floor supervisory duties.  At the direction of National Geographic, he was responsible for supervising the loading dock employees, including Ms. Swingon, and managing the on-the-floor operations.

26.     In fact, at the time he was assigned to the loading dock, Mr. Moore stated to Ms. Swingon that he was assigned to the loading dock by National Geographic to "look over" Ms. Swingon.

27.     Mr. Moore also took over the only office space on the loading dock to which Ms. Swingon had previously been assigned.  Ms. Swingon was relegated to working strictly from the floor of the loading dock.

28.     At the same time, National Geographic, through Ms. Stone, also ordered Ms. Swingon to begin "cross training" Nikita Young, another Allied Barton employee, on her managerial role.

29.     Ms. Swingon brought this instruction to the attention of her Allied Barton supervisor, Mr. Kelly.  As Ms. Swingon explained to Mr. Kelly, Ms. Young was not qualified to handle supervisory or administrative functions that were associated with the loading dock supervisor.  However, in compliance with the orders of National Geographic and Allied Barton, Ms. Swingon trained Ms. Young.

30.     As a result of her diminished role, Ms. Swingon spoke with both Mr. Kelly and Mr. Ben-Moshe about her reduced role and her belief that National Geographic was discriminating against her due to her pregnancy.  She stated that she had already had half of her duties removed with the appointment of Mr. Moore by National Geographic and believed that she may be completely replaced by Ms. Young in light of the instruction to train her. Nevertheless, Allied Barton did not take any action in Ms. Swingon's defense or in support of her.  Rather, Allied Barton capitulated and aided with National Geographic's discriminatory conduct.

31.     In or around the last week of May, Mr. Moore approached Ms. Swingon to speak with her about her pregnancy.  During that conversation, Mr. Moore stated to Ms. Swingon that she would not be permitted to serve as the Loading Dock Supervisor if she was pregnant at the instruction of Ms. Hadden and Ms. Stone.  Ms. Swingon responded by asking Mr. Moore what was going to happen to her and her position.  Mr. Moore callously responded "that is what we are wondering too."

32.     Mr. Moore then went on to say that Ms. Swingon should not want to be pregnant at that time in her life.  He explained this statement by stating that Ms. Swingon was young and had just gotten the job as the Loading Dock Supervisor and her pregnancy would surely impact her ability to keep her job.  Mr. Moore also stated that if Ms. Swingon was to go on maternity leave, he was not sure if she would be able to come back to work and stated that if Ms. Swingon lost her job because of her pregnancy or birth of the baby then she could not afford the rent in her new apartment.

33.     Ms. Swingon was emotionally devastated by Mr. Moore's statement.   She was already fearful about her job security following the removal of essentially all of her duties immediately following announcing her pregnancy.  Mr. Moore's statements to her made clear that if she elected to keep her child and give birth, her job would be taken from her and that the financial and professional consequences would be severe.

34.     As a result of Mr. Moore's statements and in an attempt to save her job, Ms. Swingon had an abortion on May 27, 2016.

35.     On June 16, 2016, at Ms. Stone's request, Ms. Swingon met with Ms. Stone. During that meeting, Ms. Stone stated that Ms. Young would act as the administrative head of

the loading dock, leaving Ms. Swingon with no duties.   On the same day, Ms. Stone and

National Geographic asked for Ms. Swingon's removal from the National Geographic contract.

36.     Following the meeting, Ms. Swingon sent an email to Mr. Ben-Moshe and her

human resources representative with Allied Barton on June 16, 2016 again complaining about

the clear and devastating discrimination taking place at the hands of National Geographic.  Ms.

Swingon explained that the environment with National Geographic was so severe, hostile, and

traumatic that she could not work under the conditions to which she had been subjected.

37.     On June 17, 2016, Ms. Swingon met with Mr. Ben-Moshe and her human

resources representative.  During that meeting, Ms. Swingon again expressed her belief that

National Geographic had discriminated against her on the basis of her gender and pregnancy and

that Allied Barton had not taken any actions to correct the misconduct.

38.     During this meeting, Mr. Ben-Moshe confirmed that Ms. Swingon was being

removed from the National Geographic contract pursuant to National Geographic's request.  He

also claimed that Allied Barton would immediately assign Ms. Swingon to a comparable position

on a different contract.

39.     Thereafter, in contravention of Mr. Ben-Moshe's assertion and in retaliation for

Ms. Swingon's complaints of discrimination, Allied Barton refused to find a reasonable,

comparable position for Ms. Swingon.

40.     Instead, Allied Barton only offered Ms. Swingon positions that were part time and

positions that were weekend or night shift only.  Allied Barton knew that Ms. Swingon, a mother

of a six year old, could not work a weekend or night shift only position and also raise her son.

The positions also paid less and were for fewer hours than Ms. Swingon's position as Loading

Dock Supervisor.  Allied Barton also offered Ms. Swingon positions which they knew were far

inferior to her prior position and positions for which she would not be qualified and, thus, would not be able to get.

41.     Despite Ms. Swingon's repeated requests for comparable or even reasonable employment, Allied Barton never made a valid or reasonable offer of employment to Ms. Swingon.  Instead, Allied Barton terminated Ms. Swingon's employment altogether.

## COUNT I
### Discrimination in Violation of Title VII
### Against Allied Barton

42.     Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

43.     Allied Barton, with the intent of discriminating against Ms. Swingon, engaged in a pattern of discriminatory behavior against Ms. Swingon on the basis of her gender and pregnancy in violation of Title VII.

44.     Allied Barton treated Ms. Swingon less favorably than similarly situated employees who are not female and who are not pregnant, specifically by removing Ms. Swingon's Load Dock Supervisor duties, removing Ms. Swingon from the Load Dock Supervisor position and National Geographic contract, refusing to find comparable or reasonable work for Ms. Swingon on another contract, and terminating Ms. Swingon's employment.

45.     As a direct and proximate result of Allied Barton's discriminatory conduct, Ms. Swingon has suffered and continues to suffer injury and damage in the form of lost back and future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety, stress, depression, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

46.     Allied Barton engaged in said conduct intentionally, maliciously, wantonly, oppressively, and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against Allied Barton and in favor of Ms. Swingon and that Ms. Swingon be awarded the following relief:

A.     Compensatory damages in an amount not less than $300,000, for lost wages and other economic loss, physical and emotional harm, pain and suffering, and reputational harm;

B.     Punitive damages in an amount not less than $600,000;

C.     Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D.     Such other relief as this Court deems just and proper.

**COUNT II**
**Discrimination in Violation of Title VII**
**Against National Geographic**

47.     Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

48.     National Geographic, with the intent of discriminating against Ms. Swingon, engaged in a pattern of discriminatory behavior against Ms. Swingon on the basis of her gender and pregnancy in violation of Title VII.

49.     National Geographic treated Ms. Swingon less favorably than similarly situated employees who are not female and who are not pregnant, specifically by removing Ms. Swingon's Load Dock Supervisor duties and replacing her with other employees, and removing Ms. Swingon from the Load Dock Supervisor position and National Geographic contract, thereby terminating her.

50.     As a direct and proximate result of National Geographic's discriminatory conduct, Ms. Swingon has suffered and continues to suffer injury and damage in the form of lost back and future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety, stress, depression, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

51.     National Geographic engaged in said conduct intentionally, maliciously, wantonly, oppressively, and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against National Geographic and in favor of Ms. Swingon and that Ms. Swingon be awarded the following relief:

A.     Compensatory damages in an amount not less than $300,000, for lost wages and other economic loss, physical and emotional harm, pain and suffering, and reputational harm;

B.     Punitive damages in an amount not less than $600,000;

C.     Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D.     Such other relief as this Court deems just and proper.

### COUNT III
### Hostile Work Environment in Violation of Title VII
### Against National Geographic

52.     Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

53.     National Geographic harassed Ms. Swingon on account of her gender and pregnancy during the course of her employment.  In doing so, National Geographic created a hostile and harassing work environment by engaging in grossly demeaning, humiliating, and

11

degrading conduct, including immediately removing Ms. Swingon's duties as Loading Dock

Supervisor and replacing her in that position when she announced her pregnancy, explicitly

telling her she would lose her job if she remained pregnant, advising her to terminate her

pregnancy, and, then terminating her after her abortion.

54.     Ms. Swingon did not welcome this conduct and perceived the working

environment to be abusive and hostile.  A reasonable person in Ms. Swingon's circumstances

would consider the work environment to be abusive or hostile.

55.     National Geographic's conduct was sufficiently severe and/or pervasive to alter

the conditions of Ms. Swingon's employment and create an abusive and/or hostile working

environment in violation of Title VII.

56.     As a direct and proximate result of National Geographic's discriminatory conduct,

Ms. Swingon has suffered and continues to suffer injury and damage in the form of lost back and

future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety,

stress, depression, lost earnings capacity, lost career and business opportunities and

advancement, damage to reputation, humiliation, and embarrassment.

57.     National Geographic engaged in said conduct intentionally, maliciously,

wantonly, oppressively, and/or with such recklessness and gross negligence as to evince a

conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against

National Geographic and in favor of Ms. Swingon and that Ms. Swingon be awarded the

following relief:

A.     Compensatory damages in an amount not less than $300,000, for lost wages and

other economic loss, physical and emotional harm, pain and suffering, and reputational harm;

B.      Punitive damages in an amount not less than $600,000;

C.      Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D.      Such other relief as this Court deems just and proper.

**COUNT IV**
**Retaliation in Violation of Title VII**
**Against Allied Barton**

58.      Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

59.      After, and as a direct and proximate result of Ms. Swingon complaining, on multiple occasions, of the discrimination and hostile work environment she faced at the hands of National Geographic and Allied Barton employees on the basis of her gender and pregnancy, Allied Barton knowingly and intentionally retaliated against Ms. Swingon by removing Ms. Swingon from the Load Dock Supervisor position and National Geographic contract, refusing to find comparable or reasonable work for Ms. Swingon on another contract, and terminating Ms. Swingon's employment.

60.      As a direct and proximate result of National Geographic's discriminatory conduct, Ms. Swingon has suffered and continues to suffer injury and damage in the form of lost back and future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety, stress, depression, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

61.      National Geographic engaged in said conduct intentionally, maliciously, wantonly, oppressively, and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against National Geographic and in favor of Ms. Swingon and that Ms. Swingon be awarded the following relief:

A.      Compensatory damages in an amount not less than $300,000, for lost wages and other economic loss, physical and emotional harm, pain and suffering, and reputational harm;

B.      Punitive damages in an amount not less than $600,000;

C.      Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D.      Such other relief as this Court deems just and proper.

**COUNT V**
**Intentional Infliction of Emotional Distress**
**Against Allied Barton**

62.      Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

63.      Allied Barton, by removing Ms. Swingon's Loading Dock Supervisor duties, removing Ms. Swingon from the Loading Dock Supervisor position and National Geographic contract, refusing to find comparable or reasonable work for Ms. Swingon on another contract, refusing to shield her from severe discrimination and misconduct, retaliating against her for reporting severe discrimination and misconduct, and acquiescing in the deplorable conduct of National Geographic to force Ms. Swingon to get an abortion only to shortly thereafter terminate her employment, intentionally engaged in extreme and outrageous conduct.

64.      Allied Barton engaged in said conduct through the acts of its agents and employees who were acting in the course of their duties and in the scope of their employment.

65.     Allied Barton engaged in said conduct at the most sensitive time in a woman's life, when she had just announced her pregnancy and, at the shocking urging of National Geographic, terminated her pregnancy.

66.     In doing so, Allied Barton took advantage of its position of power as Ms. Swingon's employer. Allied Barton knowingly, purposefully, and significantly violated their power and responsibility in engaging in the foregoing conduct.

67.     Allied Barton's conduct was intended to and did, cause severe emotional and psychological harm, including depression, anxiety, stress, loss of appetite, sleeplessness, and other severe mental and emotional anguish.

68.     Allied Barton's actions constituted intentional wanton, and willful wrongful conduct and Allied Barton knew or should have known that severe emotional distress was a foreseeable, likely, natural, and proximate result of its conduct.

69.     The emotional distress inflicted by Allied Barton was so severe, extreme, and outrageous that no reasonable person could be expected to endure it.

70.     Allied Barton engaged in said acts maliciously, wantonly, oppressively, and with such recklessness and gross negligence as to evidence a conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against Allied Barton and in favor of Ms. Swingon and that Ms. Swingon be awarded the following relief:

A.     Compensatory damages in an amount not less than $300,000, for physical and emotional harm, pain and suffering, reputational harm and other economic and non-economic damages;

B.     Punitive damages in an amount not less than $600,000; and

C.     Such other relief as this Court deems just and proper.

### COUNT VI
### Intentional Infliction of Emotional Distress
### Against National Geographic

71.     Ms. Swingon re-alleges and incorporates by reference paragraphs 1 through 41 as if set forth fully herein.

72.     National Geographic, by removing Ms. Swingon's Loading Dock Supervisor duties, removing Ms. Swingon from the Load Dock Supervisor, replacing her with a male in the Loading Dock Supervisor position, urging and encouraging Ms. Swingon to get an abortion, and then terminating her immediately following her abortion, intentionally engaged in extreme and outrageous conduct.

73.     National Geographic engaged in said conduct through the acts of its agents and employees, including Jeffrey Moore, who were acting in the course of their duties and in the scope of their employment.

74.     National Geographic engaged in said conduct at the most sensitive time in a woman's life, when she had just announced her pregnancy and, then at the shocking urging of National Geographic, terminated her pregnancy.

75.     In doing so, National Geographic took advantage of its position of power as Ms. Swingon's employer. National Geographic knowingly, purposefully, and significantly violated their power and responsibility in engaging in the foregoing conduct.

76.     National Geographic's conduct was intended to and did, cause severe emotional and psychological harm, including depression, anxiety, stress, loss of appetite, sleeplessness, and other severe mental and emotional anguish.

77.     National Geographic's actions constituted intentional wanton, and willful wrongful conduct and National Geographic knew or should have known that severe emotional distress was a foreseeable, likely, natural, and proximate result of its conduct.

78.     The emotional distress inflicted by National Geographic was so severe, extreme, and outrageous that no reasonable person could be expected to endure it.

79.     National Geographic engaged in said acts maliciously, wantonly, oppressively, and with such recklessness and gross negligence as to evidence a conscious disregard for the rights of Ms. Swingon.

**WHEREFORE,** Ms. Swingon respectfully requests that judgment be entered against National Geographic and in favor of Ms. Swingon and that Ms. Swingon be awarded the following relief:

A.     Compensatory damages in an amount not less than $300,000, for physical and emotional harm, pain and suffering, reputational harm and other economic and non-economic damages;

B.     Punitive damages in an amount not less than $600,000; and

C.     Such other relief as this Court deems just and proper.

Respectfully Submitted,


_____/s/ Nicholas Hantzes_____
Nicholas Hantzes, DC Bar No. 361450
Michael Hall, Fed. DC Bar No. VA016
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues to which she is entitled to a jury.


_____/s/ Nicholas Hantzes_____
Nicholas Hantzes, DC Bar No. 361450
Michael Hall, Fed. DC Bar No. VA016
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*